Good morning, your honors. I'm Linda Webb. I'm here for Petro Snegirev. Mr. Snegirev is here on an issue that has to do with ineffective assistance of counsel. This is a Strickland v. Washington case. This is also a Sixth Amendment-elected adversarial challenge to the prosecution's case, and this is a drug case. I believe that the adversarial challenge was completely missing in this case, that there was no cross-examination of the DEA expert at trial. There was no witnesses called for the defendant. There was no pre-trial investigation of the drugs that were tested by the DEA, although those drugs were available and the prosecution offered them to the defense. There was no testing in the context of this IAC challenge. I'm sorry, your honor. Has there been any testing of the drugs in the context of this habeas petition challenge? No, not at this time, no. Is there any evidence whatsoever to suggest that the lab reports were inaccurate? No, your honor, because there has been no testing done. Then how can we say there's a reasonable probability this would have made any difference whatsoever? I think one of the things, your honor, is when you listen to the DEA experts cross-examination in the sentencing, when the DEA expert talks about how the testing is done, the quality control there really is in the DEA lab, what kind of quality control they have, that he does not understand the data that was presented. He didn't even know about the data. What would that be relevant to? In terms of weight, that's not a conviction issue, that's a sentencing issue. It is to the sentencing issue, your honor, but I think when you're talking about a drug case and you have a trial, that what's happening here is that there's no challenge to the DEA, to the prosecution's case during the trial, and the jury is left with only the evidence that the prosecution presents. There's no real challenge at all that can be laid in front of the jury. What would the challenge have brought out? If it had been me doing that trial, I certainly would have been after that DEA expert about how that lab is run and what he knew about that lab and had my own expert there to testify that that is not the way that labs should be run. There should be outside quality control on these, and there is no outside quality control according to the DEA expert. Would you have tried to conduct your own drug analysis? Yes, I would have. Is there a reason why that wasn't conducted in the context of this habeas petition? No, your honor, there isn't. So I come back, I'm stuck with the same thing. What difference, how can we speculate that the analysis was defective if in anything to demonstrate that there was something defective about the analysis? I understand that question, your honor. The issue, though, the way that I look at this is that if you have a lab expert who is testifying and that lab does not really do the kind of testing that they should or that they do not have the quality controls that they should, they're not doing national standards at all for labs, that how then would you not, if you have that information, why would you not present that to a jury and let the jury make the decision? I think you just conceded it's not a conviction issue, so how does it get to the jury? Well, what I would have done with it, I would have tried to be raising a reasonable probability in front of that jury that this is not the kind of a lab that's really running a lab the way it should be run. But that's not the question the jury is being asked. The jury is being asked about possession of a mixture, and the jury isn't being asked about the percentage. That becomes, if anything, a sentencing issue. So I really don't see how this connects up to something that goes in front of a jury. In fact, as a trial judge, I'm not sure that I'd let anybody go that far. All right. The thing is that with the jury trying to raise a reasonable probability that he's not guilty, the thing is that even if it was a methadone and even if it was the amount, if the trial counsel had even had any information at all, had done any testing at all, he may have found that maybe it wasn't methadone, but he made no challenge to that representation by the prosecution at all. But it presumably found on habeas, and we didn't do anything to find that on habeas, and now you're asking us to speculate? But this is only one of the many things. Maybe we've got to find another one. That's right. All right. Okay. So also did no presentation as far as any type of a witness for the defendant, and he also did no presentation of any type of defense for the defendant. And so... I can see that defense attorney's activity may have been kind of low level, and I'm not sure what led to it, but none of that matters unless you can show us that there was something there that would have raised a reasonable possibility, a reasonable probability of the result being different. And as I look at this, I can't find anything that suggests a different result's going to be obtained. I think that at the trial, during the jury deliberation, the jury came back on count two and wanted to know whether or not they had to find both prongs of the jury instruction 11. They wanted to know if they had to find both possession and intent to distribute. And what happened in that was both the prosecution and the defense attorneys got together, and they just... The defense attorney said, no, I'm not going to... I don't want anything in on any type of a lower... Lesser-included offense. Lesser-included offense. Yes, excuse me. Brain stopped this morning. Lesser-included offense. And so they didn't do anything about that at all. He never really addressed that. It was just sort of whatever the prosecution said was okay. Let me go back a minute to your question about the DEA expert again. One of the things I think that was interesting in this is when you get to sentencing and the closing argument of the prosecution, he's arguing himself. The critical point in the defense's case is that they should have done something about the DEA expert in the laboratory. And he actually says the critical point is why is he now suggesting, or I don't like the answer, why is that an okay argument when it really should have been they should have been doing something about testing the drugs and seeing what the lab was doing. And they would have been able to present that. Well, that thrust of that seems to be the defense counsel should always do that. It's a matter of law. I'm not sure that we've ever held that or that we ought to. In a sense, I put that question, exactly the same question. And I was struck by how you used it in the brief. So what we have is suspicion and dissatisfaction of results, but nothing to call them into question. It's exactly the reaction I have here. Lots of questions, but what connects up to tell us it would have made any difference? Or there's a reasonable probability of making a difference. I think it would have made a difference just if the jury was listening to what was going on with that laboratory, whether or not the methadone was still the same drug or was the same amount. But just how does that lab run? Does that lab run according to national standards? It's not run according to national standards. The person who was testifying didn't have any information about the data. The defense attorney was given the opportunity to do the testing, but he also was given the opportunity to have large amounts of data presented to him. And when he found out it was a voluminous amount, that's when he decides that he never follows through and never picks up any of the information. He doesn't do anything with it, even though he's asked for it. Okay. Thank you. We have a minute or so left for rebuttal. May it please the Court. My name is Yvonne Lamore, and I represent the United States. The district court correctly concluded that Mr. Schneider had failed to show that he received ineffective assistance of counsel and properly denied his 2255 petition without an evidentiary hearing. And Mr. Schneider has not challenged the district court's decision that an evidentiary hearing in this case was not necessary. So the Court today is limited to review each argument on its face. And Mr. Schneider makes no claim that there is any factual basis to support an attack on the DEA lab's work. He doesn't put forward any evidence, sworn statement, or proffer that had an independent test been performed or had Mr. McCoy challenged the DEA lab analysis at trial instead of at sentencing, that any evidence would have been produced that would have undercut the government's evidence. In fact, Mr. Schneider was represented by an experienced assistant federal defender, Kevin McCoy, who made the reasonable and strategic decision to challenge that DEA lab analysis at sentencing rather than at trial. And that was the relevant time to challenge it. There would have been no point to challenge the quantity or the purity of the drugs at issue at trial because the government was required only to prove that there was a mixture. As the district court pointed out, Mr. Schneider does not claim that the substances tested were not methamphetamine, nor does he assert that the mixture at issue was less than 50 grams with regard to count one. So there would have been no point to raise this issue at trial. With regard to counsel's argument that there wasn't adequate quality control for the DEA lab's analysis, that's just simply inaccurate. I'd like to point to the record specifically at sentencing. Mr. McCoy performed a thorough cross-examination of the DEA chemist because he had retained his own chemist and consulted with that chemist. He conducted that cross-examination at pages 35 to 50 of the sentencing hearing, made arguments to the court, which the court ultimately rejected, but I'd like to read a portion of the court's ruling at sentencing. Judge Sedgwick stated, I've listened carefully to the testimony and I've reviewed the information that's available in the exhibits. Perhaps in an ideal world, the government could afford to hire somebody outside the DEA to come in and run a quarterly audit on the DEA lab. On the other hand, and really the only issue here is whether or not the lab itself is competent. I don't think there's any question, at least there's none in my mind, that Mr. Moriwaki, the DEA chemist, appears to be competent, and I believe everything that he said. So the question is whether or not because the external testing that he described is different from what Mr. McCoy might advocate or might be available in an ideal world, the court should find that this evidence isn't sufficiently persuasive. I will skip a paragraph here, and then he concludes, So I find, not only by clear and convincing evidence, but frankly beyond a reasonable doubt, that the numbers that Mr. Moriwaki gave are correct and can be relied upon. It's clear that the court heard the testimony and concluded that the standards were appropriate. With regard to counsel's argument that Mr. McCoy should have raised various defenses regarding perhaps entrapment or regarding the intent to distribute on count two, it's clear that that was a strategic decision by Mr. McCoy not to raise the intent to distribute argument for count two in response to receiving the jury question. On the record, at excerpts 68 to 69, it's clear that Mr. McCoy had previously considered submitting a lesser-included offense instruction to the judge, had consulted with his client, determined that it wasn't appropriate to submit one, and again reconsulted with his client when the jury question came in, and again determined that the strategic decision was we shouldn't ask for a lesser-included instruction. I'm here to answer your questions. I don't think we have any. Unless there are any questions, I'm happy to rely on the arguments in the brief. Thank you, Your Honor. I'd just like to mention the issue about the entrapment defense, that the entrapment was never raised, no defenses were raised for Mr. Senegrieve at all. But that wouldn't have gotten very far. This was just a standard sting operation, wasn't it? Well, I think there's some differences in the standard sting operation. For the entrapment, my understanding of the entrapment is that there is a number of things you're looking at, and the first is what the character of Mr. Senegrieve is, and, of course, he has a criminal history level of one. The important and relevant thing is whether or not what his predisposition was, and that goes to, I believe it's a Jacobuson case, which has to do with that you're supposed to be looking at whether or not there was predisposition before there was any government contact. The only person that's talking about doing anything and having any type of drug relationship with Mr. Senegrieve before this incident, where he had contact with the government here, is the C.I., and the C.I. all through the trial constantly at the detective door testified that he was untrustworthy, that he was a liar, and any other name that he could call him that basically came down that he didn't believe anything he had to say. One of the things the C.I. was supposed to have told him was that he had 50 to 100 contacts with Mr. Senegrieve prior to this incident that we're in court for. It doesn't make any sense. There's no evidence at all that he had any of that, and so there's no real relevant time in where they could show any predisposition for Mr. Senegrieve beforehand. The police got a fairly substantial quantity to sell. Well, he didn't have that quantity here. He had to go outside to get it. He did not have the contacts for the methadone here, methamphetamine and methadone here. He did not have the money to buy it here, and he also had to have them pay his way outside and also had to pay his way to get back here because he missed the plane. Thank you very much. Thank you. The case just argued is submitted for decision.
judges: Schroeder, O'scannlain, Clifton